UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | |
|---|---|
| FITZGERALD TRUCK PARTS AND SALES, LLC,<br><br>      Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>      Defendant. | Case No. 2:20-cv-00026<br><br>Chief Judge Waverly D. Crenshaw, Jr.<br>Magistrate Judge Alistair E. Newbern |

## <u>MEMORANDUM ORDER</u>

Plaintiff Fitzgerald Truck Parts and Sales, LLC, served a subpoena for documents on non-party Detroit Diesel Corporation to which Detroit Diesel objects. After a telephonic discovery dispute conference, the Magistrate Judge ordered Fitzgerald and Detroit Diesel to brief the question of the court in which motions challenging Fitzgerald's subpoena or Detroit Diesel's response should be filed, an issue on which the parties disagree. Fitzgerald filed a motion asking the Court to find that such motions are properly filed in the Middle District of Tennessee (Doc. No. 95). Detroit Diesel responded in opposition, arguing that the Eastern District of Michigan is the appropriate venue (Doc. No. 102). For the reasons that follow, Fitzgerald's motion (Doc. No. 95) will be denied. The parties shall file any motions related to the subpoena in the Eastern District of Michigan.

## I.       Background

Fitzgerald sells "used highway tractors known as 'gliders,' which are worn or wrecked highway tractors that have been refurbished." (Doc. No. 36.) Fitzgerald brings this action against the United States seeking to recover federal excise taxes and interest that it claims were wrongfully

collected by the Internal Revenue Service under 26 U.S.C. § 4051. (*Id.*) Specifically, Fitzgerald claims that its glider sales fall under a safe harbor provision of the tax code that excludes repairs and modifications to used vehicles that do not exceed 75% of the retail price of a comparable new article. (*Id.* (citing 26 U.S.C. § 4052(f)(1)).) The United States asserts that Fitzgerald's gliders are not refurbished used tractors under the terms of the safe harbor provision and are therefore properly taxed. (Doc. No. 42.) The United States also brings a counterclaim to recover excise taxes that Fitzgerald has not paid. (*Id.*)

Fitzgerald served a subpoena on non-party Detroit Diesel Corporation on July 1, 2021, asking Detroit Diesel to produce information regarding approximately 12,000 used engines that Fitzgerald claims Detroit Diesel manufactured for sale and Fitzgerald ultimately purchased after use, refurbished, and installed in a glider kit. (Doc. Nos. 50-1, 88.) Detroit Diesel objected to the subpoena and the parties engaged in negotiations that ended without agreement. (Doc. No. 88.) Fitzgerald served a new subpoena on Detroit Diesel on November 15, 2022, seeking multiple categories of information for 12,000 engines identified by serial number and manufactured by Detroit Diesel between 2012 and 2017. (Doc. No. 81-1.) Specifically, the subpoena directs Detroit Diesel to produce:

> For each Detroit Diesel engine serial number listed . . . all documents that reflect the following information:
>
> a.   The engine series and model for each engine;
>
> b.   The build, shipping and placed in service dates for each engine/tractor;
>
> c.   The name, address, phone number and email address of the customer for each engine/tractor;
>
> d.   All warranty data for the engine/tractor;
>
> e.   The highway tractor series and model, and any other identifying information (such as a serial number or other vehicle identification number) for each tractor into which each engine was installed;

f.   The build and in service dates for each tractor into which an engine was installed;

g.   The customer name and address for each such tractor;

h.   If an engine/tractor was not the first utilization of the engine in a new tractor, but rather a replacement engine for a used tractor, then please specifically identify that fact for any serial number(s), including to whom the engine was sold (including the purchaser's address) and the date of the sale.

(Doc. No. 81-1.)

The subpoena commands production of the requested documents at the law office of Brooks Wilkins Sharkey & Turco, PLLC, in Birmingham, Michigan. (*Id.*) The subpoena further directs that, "[i]n lieu of permitting inspection and copying, Detroit Diesel may produce responsive items to [Fitzgerald's counsel] by electronic means" and that, "[i]n lieu of providing the information specified . . . you may provide information from Detroit Diesel's registration/customer database that provides substantially the same information . . . ." (*Id.*) Fitzgerald has also "offered to perform the data compilation itself" if granted access to Detroit Diesel's database and to pay the cost of obtaining the requested information. (Doc. No. 88.) Detroit Diesel maintains its objections that production of the subpoenaed information would be unduly burdensome and would provide trade secrets and customer information to Fitzgerald, whom it regards as a direct competitor. (*Id.*)

Fitzgerald and Detroit Diesel have been unable to reach an agreement through independent negotiation or in a court-mediated discovery dispute conference, and Fitzgerald intends to move to compel production of the subpoenaed documents. The question now before the Court is where that motion should be filed. After a discovery dispute conference, the Court ordered the parties to file limited briefing on their positions. Fitzgerald argues that any motion to compel is appropriately filed in this Court. (Doc. No. 95.) Detroit Diesel asserts that it should be filed in the Eastern District of Michigan, where Fitzgerald has commanded that the requested information be produced. (Doc. No. 102.)

## II.     Legal Standard

Federal Rule of Civil Procedure 45 establishes that the "place of compliance" for a subpoena seeking "production of documents, electronically stored information, or tangible things" is "a place within 100 miles of where the person resides, is employed, or regularly transacts business in person . . . ." Fed. R. Civ. P. 45(c)(2)(A). The party serving a subpoena may move to compel production in "the court for the district where compliance is required . . . ." Fed. R. Civ. P. 45(d)(2)(B)(i); Fed. R. Civ. P. 37(a)(2) ("A motion for an order to [compel discovery from] a nonparty must be made in the court where the discovery is or will be taken."). Similarly, a party seeking to quash a subpoena may do so "[o]n timely motion" filed in "the court for the district where compliance is required . . . ." Fed. R. Civ. P. 45(d)(3)(A).

"When the court where compliance is required did not issue the subpoena, it may transfer a motion . . . to the issuing court if the person subject to the subpoena consents or if the court finds exceptional circumstances." Fed. R. Civ. P. 45(f). The burden of demonstrating exceptional circumstances falls to the party seeking transfer.[1] Fed. R. Civ. P. 45 advisory committee's note to 2013 amendment. "The prime concern should be avoiding burdens on local nonparties subject to subpoenas, and it should not be assumed that the issuing court is in a superior position to resolve subpoena-related motions." *Id.* Circumstances warranting transfer may include avoiding disrupting the management of the underlying litigation or when the issuing court has already ruled on the issues raised. *Id.* "Transfer is appropriate only if such interests outweigh the interests of the nonparty served with the subpoena in obtaining local resolution of the motion." *Id.*

---

[1]     This Order does not address whether Fitzgerald could show exceptional circumstances warranting transfer of a motion from the Eastern District of Michigan to the Middle District of Tennessee under Rule 45(f).

4

## III.    Analysis

Fitzgerald recognizes the "majority view" is that a motion to quash or compel must be filed in the district where compliance with the subpoena is required (Doc. No. 95). So does this Court. *See, e.g.*, *Diamond Consortium, Inc. v. Hammervold*, 386 F. Supp. 3d 904, 909 n.2 (M.D. Tenn. 2019) (finding motion to quash subpoena issued by the Eastern District of Texas properly filed in this Court "because the Middle District of Tennessee is the district where compliance with the subpoena was required"). Fitzgerald argues that "the geographical limits of Rule 45" should not apply here, however, because "[c]ourts have the authority to compel Rule 45's production request by mail or email anywhere in the country." (Doc. No. 95.)

The authority on which Fitzgerald relies addresses Rule 45's requirement that a party producing documents pursuant to a subpoena not be required to travel more than 100 miles to make the production. Fed. R. Civ. P. 45(c)(2)(A). The cases Fitzgerald cites have recognized that, when production can be made by email or mail the 100-mile restriction need not apply because no person will be required to transport the documents to another location. But these cases do not address how allowing production by mail or email affects Rule 45(d)'s direction as to where a motion to quash the subject subpoena or to compel production must be filed. For example, Fitzgerald cites *In re SII Liquidation Co.*, No. 10-60702, 2015 WL 1365591, at *2 (Bankr. N.D. Ohio Mar. 20, 2015), for the proposition that this application of Rule 45 "has allowed a discovery motion that was filed in the Northern District of Ohio to compel discovery from a law firm in Florida." (Doc. No. 95.) But the issue in that case was that the subpoena required a Florida firm to produce documents in Cleveland, Ohio—more than 100 miles from where the firm transacted business. Because the production could be made by mail or email, the Court found that this violation of Rule 45(c)(2)(A) did not invalidate the subpoena. Because the subpoena established Cleveland as the place of

5

compliance, the motion to quash was properly filed in the Northern District of Ohio under Rule 45(d).

Fitzgerald's cited authority does not support the position it advances. Instead, "in all but the rarest cases," a motion to quash a subpoena "still must be made in the district where compliance with the subpoena is required and not where the underlying action is pending . . . ." 9A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2463.1 (3d ed.) (collecting cases).[2] Further, Fitzgerald does not simply seek production of documents by email. In response to Detroit Diesel's argument that the production Fitzgerald requests is too burdensome, Fitzgerald has offered to "perform the data compilation itself" by accessing Detroit Diesel's internal databases. Fitzgerald's own proposal emphasizes the importance of the place where Detroit Diesel stores the subpoenaed information—in the Eastern District of Michigan. No deviation from Rule 45(d) is warranted.

## IV.     Conclusion

Any motion to quash Fitzgerald's November 15, 2022 subpoena of documents from Detroit Diesel shall be filed in the Eastern District of Michigan, as required by Federal Rule of Civil Procedure 45(d)(3)(B).

It is so ORDERED.

ALISTAIR E. NEWBERN
United States Magistrate Judge

---

[2]     Some courts characterize Rule 45(d)'s venue requirement as jurisdictional. *See Europlay Cap. Advisors, LLC v. Does*, 323 F.R.D. 628, 629 (C.D. Cal. 2018) (finding court "has no jurisdiction" over motion to compel production because it was not the place of compliance) (citing *Agincourt Gaming, LLC v. Zynga, Inc.*, No. 14 CV 0708, 2014 WL 4079555, at *3 (D. Nev. Aug. 15, 2014) ("Under the current version of [Rule 45], when a motion to quash a subpoena is filed in a court other than the court where compliance is required, that court lacks jurisdiction to resolve the motion."); *Chambers v. Whirlpool Corp.*, No. SACV 11-1733, 2016 WL 9451360, at *3 (C.D. Cal. Aug. 12, 2016) (same)).

6