UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | |
|---|---|
| FITZGERALD TRUCK PARTS AND SALES, LLC,<br><br>　　Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>　　Defendant. | Case No. 2:20-cv-00026<br><br>Chief Judge Waverly D. Crenshaw, Jr.<br>Magistrate Judge Alistair E. Newbern |

## MEMORANDUM ORDER

Plaintiff Fitzgerald Truck Parts and Sales, LLC (Fitzgerald) has filed a motion to compel the deposition of former Internal Revenue Service Associate Chief Counsel (Passthroughs & Special Industries) Curtis G. Wilson. (Doc. No. 90.) The United States opposes the motion. (Doc. No. 94.) Fitzgerald has filed a reply. (Doc. No. 97.) For the reasons that follow, Fitzgerald's motion (Doc. No. 90) will be denied.

### I.　　Background

The factual background of this action has been set out in other orders and is not repeated here. Fitzgerald describes the facts relevant to this motion as follows:

> During the years at issue, Fitzgerald sold refurbished highway tractors (known as gliders) combining refurbished engines from used worn or wrecked tractors with rebuilt transmissions, glider kits and other parts to create the gliders sold to customers. Section 4051 of the Internal Revenue Code imposes a 12 percent excise tax on the first retail sale of highway tractors. Repairs to a previously taxed worn or wrecked tractor can constitute production or manufacture and thereby cause the article to be taxable again, but § 4052(f)(1) provides a statutory safe harbor math test for repairs or modifications if the cost does not exceed 75 percent of the retail price of a comparable new highway tractor. Fitzgerald argues that the government should be estopped from imposing the excise taxes because in prior audits, the taxpayer was specifically told (as were other taxpayers) by the IRS that the taxes were not owed because the section 4052(f) safe harbor applied. So, Fitzgerald did

> not collect the tax from its customers and cannot do so now. Fitzgerald additionally relies on the long-standing IRS position that glider kits can be used to restore worn or wrecked highway tractors. In Revenue Ruling 91-27, the IRS told taxpayers that the use of glider kits was permitted, and it wasn't until 2017 in Notice 2017-5 (drafted and issued when Mr. Wilson was with the IRS) that the IRS announced that it was now requiring that certain components from the worn or wrecked tractor be retained in order for the safe harbor to apply.

(Doc. No. 90-1.)

Fitzgerald asserts that discovery produced by the United States identifies Wilson "as being involved in critical discussions during the years in issue related to the apparently evolving IRS interpretation of the statutes at issue in this case. Thus, Mr. Wilson's testimony will undoubtedly shed light on the IRS thinking and actions which are relevant to the issues in the case." (*Id.*) To that end, Fitzgerald noticed Wilson's deposition regarding

> the claims asserted in this case and . . . [Wilson's] knowledge and experience related to the IRS positions evaluated and/or taken regarding 26 USC §§ 4051 and 4052; IRS guidance such as Revenue Ruling 91-27, Chief Counsel Notice 201306019, Chief Counsel Notice 10143014, Revenue Procedure 2016-3, Notice 2017-5, or any others related to sections 4051 and 4052; and any of the examinations of Fitzgerald or other taxpayers involving gliders.

(Doc. No. 94-2.)

After receiving notice of Fitzgerald's intent to depose Wilson, the IRS Office of Chief Counsel notified Wilson that he was not authorized to appear, give testimony, or provide any documents to Fitzgerald in response to the subpoena pursuant to the IRS's *Touhy* regulations.[1] (Doc. No. 94-3.) Those regulations provide that, "when a request or demand for IRS records or information is made, no IRS officer, employee or contractor shall testify or disclose IRS records or information to any court, administrative agency, or other authority . . . ," subject to certain

---

[1] In *United States ex rel. Touhy v. Ragen*, 340 U.S. 462, 467 (1951), the Supreme Court affirmed the authority of the Attorney General of the United States to "validly withdraw from his subordinates the power to release department papers" by regulation.

exceptions. 26 C.F.R. § 301.9000-3(a). The IRS did not authorize Wilson to testify—and the United States argues that Fitzgerald's motion must be denied—"insofar as any knowledge or experience that he had regarding the listed topics would be protected by the attorney-client and/or executive (deliberative process) privileges." (Doc. No. 94.)

## II. Legal Standard

"[T]he scope of discovery is within the sound discretion of the trial court[.]" *S.S. v. E. Kentucky Univ.*, 532 F.3d 445, 451 (6th Cir. 2008) (first alteration in original) (quoting *Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1240 (6th Cir. 1981)). Generally, Federal Rule of Civil Procedure 26 allows discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). Relevant evidence in this context is that which "'has any tendency to make a fact more or less probable than it would be without the evidence,' if 'the fact is of consequence in determining the action.'" *Grae v. Corr. Corp. of Am.*, 326 F.R.D. 482, 485 (M.D. Tenn. 2018) (quoting Fed. R. Evid. 401).

The party moving to compel discovery bears the initial burden of proving the relevance of the information sought. *See Gruenbaum v. Werner Enterprises, Inc.*, 270 F.R.D. 298, 302 (S.D. Ohio 2010); *see also* Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment ("A party claiming that a request is important to resolve the issues should be able to explain the ways in which the underlying information bears on the issues as that party understands them."). A motion to compel discovery may be filed in a number of circumstances, including when "a party fails to answer an interrogatory submitted under Rule 33[,]" or "produce documents . . . as requested under Rule 34." Fed. R. Civ. P. 37(a)(3)(B)(iii)–(iv). "[A]n evasive or incomplete disclosure, answer, or response" is considered "a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4). "The court will only grant [a motion to compel], however, if the movant actually has a right to the discovery requested." *Grae*, 326 F.R.D. at 485.

### III. Analysis

In its opposition to Fitzgerald's motion, the United States prioritizes its argument that the IRS's refusal to authorize Wilson's testimony under the agency's *Touhy* regulations based on its own determination that "any knowledge or experience that Mr. Wilson has regarding the listed topics would be protected by the attorney-client and/or executive (deliberative process) privileges" prevents him from being subject to discovery. (Doc. No. 94.) But, as Fitzgerald points out, courts are virtually unanimous in finding that, "[w]hen the United States is a party to litigation, 'judicial control over the evidence in a case cannot be abdicated to the caprice of executive officers.' [*United States v. Reynolds*, 345 U.S. 1, 9–10 (1953)]. This would create a significant separation of powers problem." *Alexander v. F.B.I.*, 186 F.R.D. 66, 70 (D.D.C. 1998). *See also State of La. v. Sparks*, 978 F.2d 226, 234 (5th Cir. 1992) (holding that *Touhy* regulations "unquestionably give Justice Department employees the authority, when so ordered by superiors, to refuse to comply with a subpoena ordering disclosure of confidential files when the United States is not a party to a legal action"); *Boron Oil Co. v. Downie*, 873 F.2d 67, 70 (4th Cir. 1989) (holding that "[t]he policy behind such prohibitions on the testimony of agency employees is to conserve governmental resources where the United States is not a party to a suit"). Because the United States is the defendant to Fitzgerald's claims in this action, the Federal Rules of Civil Procedure, not the IRS's *Touhy* regulations, control the scope of discovery. The United States' arguments otherwise are unsupported by authority and unavailing.[2]

---

[2] Fitzgerald relies on *NetJets Large Aircraft, Inc. v. United States*, No. 2:11-CV-1023, 2014 WL 1672588, at *10 (S.D. Ohio Apr. 28, 2014), which also considered the IRS's *Touhy* regulations, for its finding that "*Touhy* does not apply to litigation in which the United States is a party." In response, the United States asserts: "We disagree with this holding and the IRS has not acquiesced in this decision." (Doc. No. 94.) The United States may, of course, persuasively argue that a case is wrongly decided (it has not done so here). Whether the IRS "acquiesce[s]" to the decision of a federal court has no bearing on the authority of that court's decision.

The United States is on firmer ground, however, in its argument that any testimony Wilson could give regarding the deposition topics noticed by Fitzgerald would be protected by attorney-client privilege. The United States sets out that "Wilson was employed within the IRS Office of Chief Counsel for 30 years and served as its Associate Chief Counsel (Passthroughs and Special Industries) during his last eight years until his retirement on December 31, 2016, with responsibility for overseeing a legal division that drafted tax regulations and other tax guidance, as well as technical tax litigation support at the trial and appellate/Supreme Court levels." (Doc. No. 94.) There is nothing in the record to indicate that Wilson served in a non-legal capacity at any point during his career at the IRS. Fitzgerald argues that Wilson's testimony is relevant because he "took a leadership role in creating [*Interim Guidance and Request for Comments on Definitions of Chassis and Body; Retail Excise Tax on Heavy Trucks, Trailers, and Tractors*, 2017-6 I.R.B. 779], which prospectively changed the IRS's interpretation of the relevant statutes," "was involved with the excise tax branch's outreach concerning how the safe harbor provision in Section 4052(f)(1) had been and were to be applied," and "was involved [in] the IRS's suspension of the issuance of private letter rulings ('PLRs') on the safe harbor provision." (Doc. No. 90-2.) But Wilson took all of these actions as a lawyer in the IRS Office of Chief Counsel.

Fitzgerald does not argue that Wilson's testimony would not be barred by attorney-client privilege. Instead, it argues that "Wilson and the government may assert those claims during the deposition process and, as appropriate, Fitzgerald may then move to compel further testimony." (Doc. No. 90-2.) Certainly, Fitzgerald is correct that "[t]he fact that the proposed deponent is an attorney, or even an attorney for a party to the suit, is not an absolute bar to taking his or her deposition, although it may be that the attorney-client privilege will provide a ground for refusal to answer some or all questions." Wright and Miller, 8A Fed. Prac. & Proc. Civ. § 2102 (3d ed.)

(collecting cases). And Fitzgerald is correct that an attorney "must normally raise the privilege as to each record sought and each question asked [at a deposition] so that at the enforcement hearing the court can rule with specificity." *United States v. Hodgson*, 492 F.2d 1175, 1177 (10th Cir. 1974).

Here, however, Fitzgerald offers no argument that it seeks to depose Wilson on any topics that are not directly related to his role as Associate Chief Counsel to the IRS. Indeed, it appears that Wilson's advice to the IRS regarding the policies at issue is the only relevant information he would be able to provide to Fitzgerald. Thus, the topics on which Fitzgerald seeks Wilson's testimony are "so inextricably intertwined with [his] communications and advice to [his] clients" that Fitzgerald "could not ask any questions on the subject without infringing on privileged communications." *Sheet Metal Workers' Health & Welfare Fund of N. Carolina v. Stromberg Metal Works, Inc.*, No. 3:19-0976, 2020 WL 12918326, at *3 (M.D. Tenn. Oct. 27, 2020).

"Although ordinarily the determination of attorney-client privilege would be decided on a question-by-question basis, . . . that kind of particularized inquiry [in this case] would be futile." *Id.* (noting that, "[i]n other privilege contexts [including assertion of Fifth Amendment privilege], courts have held that a question-by-question inquiry into the scope of the privilege is not necessary if the basis of the privilege is established"). Fitzgerald has not articulated any basis to depose Wilson to which attorney-client privilege would not apply. In this circumstance—and as a limited exception to the widely accepted general rule—requiring Wilson "to assert privilege 'in a piecemeal fashion would be futile and unduly burdensome.'" *Id.* (quoting *Goodman v. Mady*, No. 04-75011, 2005 WL 2417209, at *18 (E.D. Mich. Sept. 30, 2005)). The Court will deny Fitzgerald's motion to compel on that basis.

## IV. Conclusion

For these reasons, Fitzgerald's motion to compel (Doc. No. 90) is DENIED.

It is so ORDERED.

_____
ALISTAIR E. NEWBERN
United States Magistrate Judge