**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NORTHEASTERN DIVISION**

FITZGERALD TRUCK PARTS AND
SALES, LLC, f/k/a FITZGERALD KIT
TRUCKS AND SALES, LLC,

      Plaintiff and Counterclaim Defendant,

v.

UNITED STATES OF AMERICA,

      Defendant and Counterclaim Plaintiff.

Case No. 2:20-cv-00026

JURY DEMAND

Chief Judge Waverly D. Crenshaw, Jr.
Magistrate Judge Alistair E. Newbern

**BRIEF IN SUPPORT OF THE UNITED STATES OF AMERICA'S**
**RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW**
**AND MOTION FOR A NEW TRIAL**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ iii

LEGAL STANDARD ................................................................................................................... 1

I.    FED. R. CIV. P. 50(B) RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW ...................................................................................................................................... 1

II.    FED. R. CIV. P. 59 MOTION FOR A NEW TRIAL ......................................................... 1

ARGUMENT .................................................................................................................................. 2

I. PLAINTIFF FAILED TO MEET ITS BURDEN TO PRODUCE LEGALLY SUFFICIENT EVIDENCE FROM WHICH A JURY COULD FIND IT MET THE REQUIREMENTS OF 26 U.S.C. § 4052(f). ................................................................................................................... 2

    *A. Fitzgerald Bears the Burden of Proof for Each Glider Tractor Sale.* ............................. 2

    *B. The Record Contains No Evidence for the Tractors Sold Between 2015–2017.* ............ 5

    *C. The Record Contains Insufficient Evidence That Plaintiff Satisfied the Safe Harbor for 2012–2014.* .............................................................................................................. 7

    *D. MSRP is Not Retail Price as a Matter of Law.* ............................................................. 9

II. THE EVIDENCE TAKEN IN THE LIGHT MOST FAVORABLE TO FITZGERALD ESTABLISHED THAT FITZGERALD WAS BUYING PARTS, BUT THE SAFE HARBOR REQUIRES REPAIR OF AN ARTICLE AS A MATTER OF LAW. ........................................ 10

III. THE COURT IMPROPERLY EXCLUDED DR. LI'S TESTIMONY. ................................ 12

IV. THE COURT ABUSED ITS DISCRETION IN LIMITING MR. MACKAY'S TESTIMONY .............................................................................................................................. 16

V. COMMENTS BY PLAINTIFF'S TRIAL COUNSEL AND WITNESSES AND EXHIBITS ABOUT PRIOR AUDITS WERE IRRELEVANT AND BECAME HIGHLY PREJUDICIAL BECAUSE OF THE COURT'S ORDER TO BIFURCATE THE TRIAL. .................................. 17

    *A. The Court Improperly Allowed Fitzgerald's Trial Counsel and Witnesses to Discuss Fitzgerald's Audit History, Which was Irrelevant to the De Novo Tax Merits Trial and Highly Prejudicial.* ........................................................................................................ 17

    *B. The Court Erred in Allowing Wainscott to Testify About Prior Audits of Another Taxpayer, Not the Merits of the Tax Case.* ..................................................................... 22

    *C. The Court Erred in Allowing Joseph DePew to Discuss and Read From a 2005-2011 IRS Appeals Case Activity Record, Which Was Irrelevant and Highly Prejudicial.* ..... 22

VI. THE COURT IMPROPERLY EXCLUDED CERTAIN EXHIBITS. ................................... 23

CONCLUSION ............................................................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alyn v. S. Land Co., LLC*,
No. 3:15-CV-00596, 2016 WL 7451546 (M.D. Tenn. Dec. 28, 2016)
(Crenshaw, J.) ..............................................................................................................21

*Anda v. Wickes Furniture Co.*,
517 F.3d 526 (8th Cir. 2008) .........................................................................................3

*Barnes v. City of Cincinnati*,
401 F.3d 729 (6th Cir. 2005) .........................................................................................1

*Besase v. United States*,
623 F.2d 463 (6th Cir. 1980) .........................................................................................3

*In re Beverly Hills Fire Litig.*,
695 F.2d 207 (6th Cir. 1982) .......................................................................................19

*Boise Nat'l Leasing, Inc. v. United States*,
389 F.2d 633 (9th Cir. 1968) ..................................................................................11, 12

*Bridgeport Music, Inc. v. Justin Combs Pub.*,
507 F.3d 470 (6th Cir. 2007) ...................................................................................17, 23

*Broad Motors v. Smith*,
86 F. Supp. 4 (E.D. Pa. 1949) .......................................................................................7

*Cadwalader v. Jessup & Moore Paper Co.*,
149 U.S. 350 (1893) ....................................................................................................11

*Campbell v. Brown*,
245 F.2d 662 (5th Cir. 1957) .......................................................................................20

*Caudill Seed & Warehouse Co., Inc. v. Jarrow Formulas, Inc.*,
53 F.4th 368 (2022) (per curiam) ...................................................................................1

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ......................................................................................................1

*CenTra, Inc. v. United States*,
953 F.2d 1051 (6th Cir. 1992) .......................................................................................7

*Cleveland v. Peter Kiewit Sons' Co.*,
624 F.2d 749 (6th Cir. 1980) ...................................................................................17, 18

Case 2:20-cv-00026    Document 198-1    Filed 08/11/23    Page 3 of 32 PageID #: 15752

*Dixon v. United States,*
    381 U.S. 68 (1965)........................................................................................................20

*Ercegovich v. Goodyear Tire & Rubber Co.,*
    154 F.3d 344 (6th Cir. 1998) .......................................................................................4

*Facebook, Inc. & Subsidiaries v. IRS,*
    2018 U.S. Dist. LEXIS 81986 (N.D. Cal. May 14, 2018) .......................................22

*Fitzgerald Truck Parts & Sales, LLC v. United States,*
    2023 U.S. Dist. LEXIS 76186 (M.D. Tenn. May 2, 2023)......................................20

*Freed v. Erie Lackawanna Ry. Co.,*
    445 F.2d 619 (6th Cir. 1971) .......................................................................................4

*Hoffman Motors Corp. v. United States,*
    473 F.2d 254 (2d Cir. 1973)........................................................................................3

*Katz v. United States,*
    No. 91-5623, 1992 WL 103006 (E.D. Pa. May 6, 1992)...................................19, 20

*Krawczyk v. Twp. of Hagar,*
    673 F. App'x 508 (6th Cir. 2016) ..............................................................................11

*Laney v. Commissioner,*
    674 F.2d 342 (5th Cir. 1982) .......................................................................................4

*Lewis v. Nationstar Mortg.,*
    5 F. Supp. 3d 890 (E.D. Mich. 2014)........................................................................10

*Lewis v. Reynolds,*
    284 U.S. 281 (1932)......................................................................................................2

*Lockheed Aircraft Corp. v. United States,*
    553 F.2d 69 (Ct. Cl. 1977) ..........................................................................................3

*Michigan Exp., Inc. v. United States,*
    374 F.3d 424 (6th Cir. 2004) .....................................................................................21

*Mullins v. United States,*
    210 F.R.D. 629 (E.D. Tenn. 2002)............................................................................19

*Mys v. Mich. Dep't of State Police,*
    886 F.3d 591 (6th Cir. 2018) .......................................................................................1

*Nielsen v. Preap,*
    139 S. Ct. 954 (2019)..................................................................................................10

*O'Neal v. Comm'r*,
  T.C. Memo 2016-49 (2016) ...................................................................................19

*Raleigh v. Ill. Dept. of Revenue*,
  530 U.S. 15 (2000) .............................................................................................2

*Reeves v. Sanderson Plumbing Prods., Inc.*,
  530 U.S. 133 (2000) ...........................................................................................1

*Ruan Fin. Corp. v. United States*,
  765 F. Supp. 985 (S.D. Iowa 1990), *aff'd*, 976 F.2d 452 (8th Cir. 1992) ...............11

*Rupert v. United States*,
  225 F.R.D. 154 (M.D. Pa. 2004) ........................................................................20

*Schneider Nat'l Leasing, Inc. v. United States*,
  11 F.4th 548 (7th Cir. 2021) ....................................................................5, 9, 11, 12

*Sharwell v. Comm'r*,
  419 F.2d 1057 (6th Cir. 1969) ..............................................................................3

*Sherwin-Williams Co. v. United States*,
  403 F.3d 793 (6th Cir. 2005) ..............................................................................21

*Sinder v. United States*,
  655 F.2d 729 (6th Cir. 1981) ................................................................................2

*Slack Techs., LLC v. Pirani*,
  143 S. Ct. 1433 (2023) .......................................................................................10

*Tilley v. Kalamazoo Cty. Rd. Comm'r*,
  777 F.3d 303 (6th Cir. 2015) ..............................................................................21

*Twachtman v. Connelly*,
  106 F.2d 501 (6th Cir. 1939) ..............................................................................17

*Union Equity Co-op. Exch. v. Comm'r*,
  481 F.2d 812 (10th Cir. 1973) ............................................................................20

*United States v. Evans Landscaping Inc.*,
  850 Fed. Appx. 942 (6th Cir. 2021) ....................................................................24

*United States v. Guy*,
  978 F.2d 934 (6th Cir. 1992) ..............................................................................21

*United States v. River Coal Co.*,
  748 F.2d 1103 (6th Cir. 1984) ............................................................................21

*United States v. Rohner*,
  634 Fed. Appx. 495 (6th Cir. 2015).....................................................................2

*United States v. Skelly Oil Co.*,
  394 U.S. 678 (1969).......................................................................................19

*Walker v. Mulvihill*
  83 F.3d 423, 1996 WL 200288 (6th Cir. 1996) (unpublished)...............................4

**Statutes**

26 U.S.C. § 4051(a) ........................................................................................13

26 U.S.C. § 4052(f).................................................................................... *passim*

26 U.S.C. § 4221(a) ..........................................................................................7

26 U.S.C. § 4221(a)(4).......................................................................................7

Pub. L. No. 105-206, 112 Stat. 685 (1998), 112 Stat. § 1001(a).............................22

**Other Authorities**

26 C.F.R. § 145.4052–1 ....................................................................................6

26 C.F.R. § 145.4052–1(a)(2)(i) ..........................................................................7

Fed. R. Civ. P. 50(a)(1) ....................................................................................1

Fed. R. Civ. P. 50(b) .......................................................................................1

Fed. R. Civ. P. 59 ...........................................................................................1

Fed. R. Evid. 402 ..........................................................................................23

Fed. R. Evid. 408 ..........................................................................................23

Fed. R. Evid. 802(d)(2)...............................................................................24, 25

Fed. R. Evid. 803(6)...................................................................................24, 25

Merriam-Webster.com Dictionary, https://www.merriam-
  webster.com/dictionary/retail........................................................................5

Black's Law Dictionary (11th ed. 2019)................................................................5

IRS Revenue Ruling 91-27 ...............................................................................11

### I. Fed. R. Civ. P. 50(b) Renewed Motion for Judgment as a Matter of Law

Judgment as a matter of law is appropriate "[i]f a party has been fully heard on an issue . . . and a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1). When considering a motion for judgment as a matter of law under Rule 50, a court should review all the evidence in the record. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Mys v. Mich. Dep't of State Police*, 886 F.3d 591, 599 (6th Cir. 2018). A court should grant judgment as a matter of law "if, when viewing the evidence in a light most favorable to the non-moving party, giving that party the benefit of all reasonable inferences, there is no genuine issue of material fact for the jury, and reasonable minds could come to but one conclusion in favor of the moving party." *Barnes v. City of Cincinnati*, 401 F.3d 729, 736 (6th Cir. 2005). Thus, the moving party is entitled to a directed verdict if "the nonmoving party has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

### II. Fed. R. Civ. P. 59 Motion for a New Trial

Rule 50(b) together with Rule 59 allows a trial court to grant a new trial on all or some of the issues, and to any party, "after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." The Sixth Circuit interprets Rule 59 to mean that "a new trial is warranted when a jury has reached a seriously erroneous result as evidenced by: (1) the verdict being against the weight of the evidence; (2) the damages being excessive; or (3) the trial being unfair to the moving party in some fashion, *i.e.*, the proceedings being influenced by prejudice or bias." *See Caudill Seed & Warehouse Co., Inc. v. Jarrow Formulas, Inc.*, 53 F.4th 368, 379 (2022) (per curiam) (internal quotation marks and citation omitted).

## ARGUMENT

## I. PLAINTIFF FAILED TO MEET ITS BURDEN TO PRODUCE LEGALLY SUFFICIENT EVIDENCE FROM WHICH A JURY COULD FIND IT MET THE REQUIREMENTS OF 26 U.S.C. § 4052(F).

### A.    *Fitzgerald Bears the Burden of Proof for Each Glider Tractor Sale.*

"The IRS's tax assessments enjoy 'a legal presumption of correctness' in civil cases." *United States v. Rohner*, 634 Fed. Appx. 495, 499 (6th Cir. 2015) (citing *United States v. Fior D'Italia, Inc.*, 536 U.S. 238, 242 (2002)). "If an assessment is supported by a minimal evidentiary foundation, the burden of disproving it rests on the taxpayer. *Id.* (internal quotation marks and citation omitted). This burden-shifting procedure "reflects several compelling rationales . . . not to be disregarded lightly," including the taxpayer's superior access to information about his own finances. *Raleigh v. Ill. Dept. of Revenue*, 530 U.S. 15, 21 (2000).

In a tax refund suit, taxpayers have the burden to rebut the presumption of correctness of the tax assessment and prove an overpayment of tax. *See Lewis v. Reynolds*, 284 U.S. 281, 283 (1932) (taxpayer must establish an overpayment, not merely that the IRS's grounds for the assessment are incorrect). The taxpayer has both the burden of producing evidence and the burden of persuasion. *See Sinder v. United States*, 655 F.2d 729, 731 (6th Cir. 1981).

Plaintiff thus had the burden to show, for each of the over 12,000 glider tractor sales at issue from 2012 to 2017, that the sale satisfied the safe harbor under 26 U.S.C. § 4052(f). In other words, Plaintiff was required to prove for each glider tractor sold that: (a) the cost of repair did not exceed 75% of the retail price of a comparable new tractor; and (b) the tractor it claimed to have repaired was taxable when new. While Plaintiff's witnesses repeatedly testified that it had millions of documents to prove its case, the trial record contains no documents for 2015–2017 and it introduced just a single document concerning tractor sales for 2012–2014. The record contains only generalized testimony about Plaintiff's operations and glider tractor sales.

Plaintiff was in the best position to put on documents to prove its case since it claimed that its "millions and millions" of records supported its testimony. (Trial Tr. at XX).[1] The lack of documentary evidence to corroborate the otherwise self-serving testimony of Plaintiff's witnesses (its president, former vice president of operations, and former in-house counsel)[2] is insufficient, *as a matter of law*, to meet Plaintiff's burden of proof. *Sharwell v. Comm'r*, 419 F.2d 1057, 1060 (6th Cir. 1969) ("The only evidence presented on this issue is the self-serving testimony of the petitioner which primarily is conclusory in nature and is not sufficient to prove that the petitioner or her husband did not in fact receive the income with which they were charged by the Commissioner.");[3] *see also Hoffman Motors Corp. v. United States*, 473 F.2d 254, 260 (2d Cir. 1973) (vague and undocumented testimony by taxpayer was insufficient to sustain its burden of proof); *Lockheed Aircraft Corp. v. United States*, 553 F.2d 69, 75 (Ct. Cl. 1977) (oral testimony of witnesses, speaking only from memory in regard to past transactions has, in the absence of contemporaneous documentary or physical evidence, consistently been found to be of little probative value); *cf. Anda v. Wickes Furniture Co.*, 517 F.3d 526, 531 (8th Cir. 2008) (plaintiff may not merely point to unsupported self-serving allegations to establish an essential element of its case; it must substantiate allegations with sufficient probative evidence).

---

[1] Defendant has a rough draft of the trial transcript and expects to receive the final copy when the court reporter finishes it, so placeholder citations have been included that state "(Trial Tr. at XX)" and will later be amended. The rough draft of the trial transcript explicitly states that "The following is a rough draft and cannot be duplicated or cited." This is why citations were not included.

[2] Bresaw and DePew continue to work for dealerships owned by the son of Plaintiff's President. (Trial Tr. at XX).

[3] In this case, moreover, Plaintiff possessed the records related to its operations and sales of glider tractors. Unlike the taxpayers in *Besase v. United States*, 623 F.2d 463, 465–66 (6th Cir. 1980), Plaintiff here did not need to prove a negative such as the non-receipt of income. There are no grounds on which to shift the burden of production or persuasion to the United States.

The reason for such a rule is plain: if self-serving testimony offered without corroboration by the records of the business that Plaintiff operated is sufficient, then taxpayers would always testify that no tax is owed and not offer their records as evidence. *See Laney v. Commissioner*, 674 F.2d 342, 350 (5th Cir. 1982) (noting that a holding that a taxpayer's testimony is sufficient to overcome the presumption of correctness "effectively guts" the traditional burden of proof" because a taxpayer "will always" give such testimony).[4]

The risk to the truth here is obvious given Plaintiff's interrogatory responses. (Tr. Ex. 135). In the responses Plaintiff stated, "In some instances, vendors that sold to Fitzgerald worn or wrecked tractors and the engines extracted therefrom did provide VINs, but for the majority, VINs were not provided. . . . Fitzgerald did not maintain any specific records that tracked the VINs of the worn or wrecked tractors." Testimony by individual witnesses inconsistent with the corporate Plaintiff's responses makes a mockery of the truth-seeking process of discovery and trial. The interrogatory was answered only after court order and long after discovery closed. Such answers, while proper as admissions, are not necessarily binding. *Cf. Freed v. Erie Lackawanna Ry. Co.,* 445 F.2d 619, 620–21 (6th Cir. 1971) (interrogatory responses should be weighed against conflicting evidence because new information may come to light after the responses are given); *Walker v. Mulvihill* 83 F.3d 423, 1996 WL 200288, at *5 (6th Cir. 1996) (unpublished) ("However, this Circuit has clearly held that answers to interrogatories may be utilized as admissions."); *Freed v. Erie Lackawanna Ry. Co.*, 445 F.2d 619, 621 (6th Cir. 1971), *cert. denied*, 404 U.S. 1017 (1972). And if new information came to light, Plaintiff was under a duty

---

[4] This case is unlike cases in which a plaintiff would not be expected to have records, such as discrimination cases. *See, e.g.*, *Ercegovich v. Goodyear Tire & Rubber Co*., 154 F.3d 344, 356 (6th Cir. 1998) ("Circumstantial evidence establishing the existence of a discriminatory atmosphere at the defendant's workplace in turn may serve as circumstantial evidence of individualized discrimination directed at the plaintiff.").

to supplement its response; which it did not do.

As a result of the lack of evidence relating to each glider tractor sale and only general testimony of having "millions and millions" of documents that were never produced to the factfinder, Plaintiff has not carried its burdens of proof and persuasion.

**B.** *The Record Contains No Evidence for the Tractors Sold Between 2015–2017.*

The record does not contain evidence sufficient to meet Plaintiff's burden to show that for each of its sales of glider tractors from 2015–2017: (1) the cost of the repair did not exceed 75% of the retail of price of a comparable new tractor; and (2) the tractor it claimed to have repaired was taxable when new. 26 U.S.C. § 4052(f).

The cost of repair includes all the costs to get the highway tractor ready for sale to an individual purchaser, other than federal, state, or local taxes. A "comparable new" highway tractor is a highway tractor which is functionally identical to the repaired highway tractor and is new. "Retail price," according to the Seventh Circuit opinion, which the Court repeatedly said it was going to follow, is the price at which a new highway tractor is sold directly to the consumer or end-user, usually an individual purchaser or small business, in the open market from a dealer ready for use. In other words, the price is what the end user of a product pays, without tax. *See Schneider Nat'l Leasing, Inc. v. United States*, 11 F.4th 548 (7th Cir. 2021); *see also* definition of "retail" in Black's Law Dictionary (11th ed. 2019) and "retail," in Merriam-Webster.com Dictionary, https://www.merriam-webster.com/dictionary/retail. Accessed 6/5/2023.

For 2015–2017, the record contains *no evidence* of the cost of repair of the tractors Plaintiff sold during 2015–2017 or the retail price of new tractors comparable to the tractors Plaintiff sold during 2015–2017. Plaintiff claimed it maintained business records, but the trial record contains neither testimony nor documents showing the cost of repair for any tractor during 2015–2017.

Thus, there is no evidence from which to calculate the ratio of the cost of repair to the retail price of a comparable new article. Generalized testimony about the cost of repair does not meet Plaintiff's burden.[5] The record contains no evidence of sale price or retail price (or even MSRP – Plaintiff's preferred, but incorrect, denominator) for 2015–2017.

Moreover, testimony indicated that documents were available and accessible to Plaintiff to make such a showing. For example, Plaintiff claimed to have records to show the sale price for its glider tractors and to show its cost of repair was less than the sale price. (Trial Tr. at XX). And Plaintiff's witness Nick Bresaw testified that information regarding retail price is available from dealers or from the OEMs who collect such data from their dealers.[6] (Trial Tr. at XX). But the record contains no evidence of any of these items.

The record contains *no evidence* that the tractors it sold in 2015–2017 were taxable when new (assuming for the sake of argument that it repaired a worn or wrecked tractor). Plaintiff posited that all tractors over a certain weight are taxable when new and then offered Tr. Ex. 16 to show that all the engines came from tractors of a certain weight.

Plaintiff cited no law to support its legal proposition that all tractors over a certain weight are taxable when new. Under 26 C.F.R. § 145.4052–1 and Sixth Circuit case law, the sale of the original tractor is not taxable if, among other things, it first occurred outside the United States or

---

[5] Even if the jury accepted that the sale price to Plaintiff's customers should be reduced for profit to determine the cost of repair, the trial record contains no evidence of the sale price to customers or profit for 2015–2017.

[6] Bresaw's statements that he did not know he could get such information from dealers or OEMs until he moved to the dealership owned by Tommy Fitzgerald, Jr. is of no relevance to the safe harbor determination. Whether he knew during 2015–2017 that he could get retail sale price information goes to a reasonable cause defense to penalties. That question was not included in this bifurcated part of the trial. His testimony shows that Plaintiff could now obtain such information for the years in issue, but it is not in the record.

it meets one of the circumstances provided in 26 U.S.C. § 4221(a), such as if the sale was to a state or local government. *See* 26 C.F.R. § 145.4052–1(a)(2)(i) ("The sale of an article is a taxable sale unless[] . . . the sale is a tax-free sale under section 4221); *CenTra, Inc. v. United States*, 953 F.2d 1051 (6th Cir. 1992) (highway tractor sold in Canada not a taxable sale); 26 U.S.C. § 4221(a)(4) (concerning sales to state or local governments); *see also Broad Motors v. Smith*, 86 F. Supp. 4 (E.D. Pa. 1949).

No evidence shows that the original tractor was not sold to a state or municipal government, exported out of the United States for sale, or not sold to a tax-exempt organization. Bresaw testified that tractors from which the engines it purchased were originally installed could have been first sold outside the United States. (Trial Tr. at XX). At least one salvage yard from which Fitzgerald sourced its engines bought parts from municipalities. (Trial Tr. at XX).

Plaintiff sought to meet its burden with information from Detroit Diesel. (Tr. Ex. 16). Tr. Ex. 16 only demonstrates, drawing all inferences in Plaintiff's favor, that the engines Plaintiff used in the glider tractors came from other highway tractors. It does not even pretend to establish whether the original highway tractor was taxable when new. Indeed, many of the listed engine serial numbers and model numbers on Tr. Ex. 16 correspond to the listed engine serial numbers and model numbers of engines that Plaintiff purchased from Mexico, as listed on Tr. Exs. 50 and 51, which the Court improperly excluded for lack of foundation. Testimony that Plaintiff could have obtained such information at one time (Trial Tr. at XX) but failed to do so or failed to retain the information is also not evidence sufficient to meet its burden of proof. If Plaintiff failed to retain such records, it did so at its peril. Plaintiff cannot meet its burden of proof.

### C. The Record Contains Insufficient Evidence That Plaintiff Satisfied the Safe Harbor for 2012–2014.

The evidence about the cost of repair does not meet Plaintiff's burden for 2012–2014.

The record contains only Tr. Ex. 340, which lists Plaintiff's sales and sales prices for 2012 through 2014. Witnesses also testified that the sale price on Tr. Ex. 340 should be reduced by profit to calculate the cost of sale, notwithstanding that no such adjustment was reflected in Tr. Ex. 340. (Trial Tr. at XX). And there is no evidence about what profit Plaintiff earned on each sale or how it would determine its profit.

There is also only scant evidence of aggregate profit by month, quarter, or year. Tr. Ex. 100 reflects Plaintiff's profit for 2012 only. On pages 13 and 57, it shows that Plaintiff's profit margin in 2012 was 5.5% using the commonly accepted measure of EBITDA, which stands for Earnings Before Interest, Taxes, Depreciation, and Amortization. Jeffrey J. Haas, CORPORATE FINANCE, Ch. 2 § 3(3) (2d ed. 2021).

It also shows an "Adjusted EBITDA," the adjustments to which are itemized on page 66. No evidence demonstrates that these adjustments would be acceptable to determine profit on tractor sales to the exclusion of Plaintiff's other operations, such as servicing tractors.

Tr. Ex. 340 also contains a column for "COMP TRUCK V…" Bresaw testified that under this header he listed the MSRP or list price for comparable new highway tractors, values that he derived from a 2006 Freightliner DataBook. (Trial Tr. at XX and Tr. Exs. 257 & 309).[7] The "COMP TRUCK V" was, according to Bresaw, based on information that he had obtained from a Freightliner DataBook for 2006. The record contains no evidence from which a jury could reasonably extrapolate the retail price for a comparable new highway tractor from the MSRP listed in the 2006 Freightliner DataBook. Bresaw also testified that each of Plaintiff's glider

---

[7] The information Bresaw claims to have used allegedly came from a Freightliner Data. Tr. Ex. 186, the cover pages from a Freightliner data book allegedly used by Bresaw clearly states that the MSRP data contained in it "do not govern, and should not be construed to govern, the prices which the Company's Dealers establish for their respective customers."

tractor sales was highly customized. (Trial Tr. at XX). Bresaw appears to have added to the 2006 MSRP or list price the estimated sum of $9,881 for the option content on tractors sold by Fitzgerald, along with an estimated model year escalator in the amount of $4,983. Tr. Exs. 257 and 309. But no evidence shows the customization of each tractor and whether the estimated model year escalators in fact conformed with later published list prices from Freightliner and Peterbilt. (Nor did Bresaw make any adjustment for the commonly known 30-40% pricing discount from MSRP or list price to a retail sales price.) Given the absence of any supporting documents for Plaintiff's listed "COMP TRUCK V…", the evidence, taken in the light most favorable to Plaintiff requires judgment as a matter of law in favor of the United States.

**D.** ***MSRP is Not Retail Price as a Matter of Law.***

The "retail price" is the price at which comparable new highway tractors are sold to individuals and small operators. *See Schneider Nat'l Leasing, Inc. v. United States*, 11 F.4th 548, 561 (7th Cir. 2021). The meaning of "retail price" as set forth in § 4052(f) is a question of law to be determined by the Court. It is not a fact question for the jury. Plaintiff cannot meet its burden of proof based on the evidence in the record using the correct legal definition of retail price.

Fitzgerald, Sr. declared that "[t]he market is the only thing that would dictate [the retail price] on a new truck." (Trial Tr. at XX). Bresaw similarly stated that new tractors sold for under MSRP. (Trial Tr. at XX). And at least one of Fitzgerald's customers, Charles Clark, stated that the price for which Fitzgerald was selling a glider tractor to him was basically the same price as that of a comparable new tractor. (Trial Tr. at XX). Other evidence in the record of actual sales during the years at issue is found in Tr. Ex. 101.[8] (Trial Tr. at XX). As explained above in Part

---

[8] In addition, Tr. Ex. 102, improperly excluded by the Court as cumulative, contains evidence of an actual sale.

I.A., general and vague statements that gliders generally sell for less than 75% of the retail price of a comparable new tractor cannot meet Plaintiff's burden, no matter how many times the line is repeated.[9]

## II. THE EVIDENCE TAKEN IN THE LIGHT MOST FAVORABLE TO FITZGERALD ESTABLISHED THAT FITZGERALD WAS BUYING PARTS, BUT THE SAFE HARBOR REQUIRES REPAIR OF AN ARTICLE AS A MATTER OF LAW.

The evidence taken in the light most favorable to Plaintiff at most shows that Plaintiff was buying parts – glider kits, engines, and transmissions. The safe harbor requires repair of a preexisting identifiable article. Here, the article must be a highway tractor.

By its terms, the safe harbor in § 4052(f) applies only when "repairs" or "modifications" have been made to the article described in § 4051(a)(1). In defining "article" in § 4051(a)(1), Congress distinguished between a tractor and "parts or accessories." "Article," as used in § 4052(f)(1) (the safe harbor) is defined by reference to § 4051(a)(1): "An article described in section 4051(a)(1). . ." Section 4052(f)(1) and (2) refer to "the article" that is repaired. The exemption requires the taxpayer to restore "the article" to functionality.

Use of the definite article "the" relates the repaired article back to the previously defined article incorporating § 4051(a)(1). *Slack Techs., LLC v. Pirani*, 143 S. Ct. 1433, 1440 (2023) ("The statute uses the definite article to reference the particular registration statement alleged to be misleading. . ."). "The use of the definite article is significant." *Lewis v. Nationstar Mortg.*, 5 F. Supp. 3d 890, 900 (E.D. Mich. 2014); *see also Nielsen v. Preap*, 139 S. Ct. 954, 965 (2019) (recognizing that "grammar and usage establish that the is a function word . . . indicat[ing] that a following noun or noun equivalent is definite or has been previously specified by context"

---

[9] For purposes of this motion for judgment as a matter of law, as we must, we assume the jury did not credit the testimony of Mr. MacKay.

(quotation marks omitted, emphasis added)); *Krawczyk v. Twp. of Hagar*, 673 F. App'x 508, 512 (6th Cir. 2016).

The safe harbor under § 4052(f) can thus only apply if Plaintiff repairs or modifies "the article," which in this case is a highway tractor. Further, repairing "the article" requires an identifiable article that is repaired. A tractor deconstructed with its parts sold off separately no longer has any use or value as a tractor and, accordingly, is no longer a tractor. This is not a new position. *See Cadwalader v. Jessup & Moore Paper Co.*, 149 U.S. 350 (1893). This proposition is also the long-standing design of the retail excise tax on heavy trucks. *See, e.g.*, *Boise Nat'l Leasing, Inc. v. United States*, 389 F.2d 633, 636 (9th Cir. 1968).

The Seventh Circuit's decision in *Schneider Nat'l Leasing v. United States*, 11 F.4th 548 (7th Cir. 2021), is not to the contrary. In *Schneider*, the taxpayer decided to overhaul tractors <u>in its fleet</u> "using new and refurbished parts packaged together in so-called glider kits." 11 F.4th at 551. Unlike Fitzgerald, *Schneider* owned the tractors before disassembly, during refurbishment, and after reassembly. *Id.* at 551–52. *Schneider* fits the fact pattern of Revenue Ruling 91-27 and *Ruan Fin. Corp. v. United States*, 765 F. Supp. 985, 988 (S.D. Iowa 1990), *aff'd*, 976 F.2d 452 (8th Cir. 1992). Also, unlike Fitzgerald, *Schneider* "reused the transmission, driveline, rear axle, rear suspension, and rear wheel hubs—and sometimes the fuel tank, fifth wheel, and rear brakes—in the refurbished tractors." *Id.* at 552.

*Boise National Leasing* and *Ruan Financial* reached different results depending on whether an identifiable tractor was repaired: in *Boise Nat'l Leasing* there was no identifiable preexisting tractor, but in *Ruan Financial* there was an identifiable preexisting tractor. *Boise Nat'l Leasing*, 389 F.2d at 636; *Ruan Financial*, 765 F. Supp. at 991. Likewise, in *Schneider Nat'l Leasing* there was an identifiable preexisting tractor, as the taxpayer owned the fleet of

tractors it repaired with the glider kits. 11 F.4th at 551–52. Here, in contrast, with only minor exceptions that Plaintiff failed to identify, there was no preexisting tractor, identifiable as such, when Plaintiff combined an engine, transmission, and a glider kit.

These two distinct situations are recognized by Freightliner, the glider kit manufacturer from whom Plaintiff acquired the glider kits. Tr. Ex. 20, the Freightliner Glider Kit Brochure, tells prospective customers, "In many cases, <u>an owner</u> using a glider kit to rebuild a vehicle worn out by use or age or disabled from a wreck, may be exempt from Federal Excise Tax…" (emphasis added). Plaintiff was not the owner of any worn out or wrecked tractor. Plaintiff purchased parts. Tr. Ex. 100 at 39 states that Plaintiff purchased "Cabs and Chassis Direct from Manufacturer" and purchased "Engines from Salvage Yards and Remanufacturers" and purchased "Parts from Salvage Yards, Auctions and Third-Party Vendors." *See also* Tr. Ex. 100 at 50, 60–61. The vendors testified that they did not provide title to the worn or wrecked tractor to Plaintiff. Title is an indicium of ownership. There is no evidence that Plaintiff owned the vast majority of the worn or wrecked tractors it claims to have repaired.

The evidence at trial showed Plaintiff, with minor exceptions, bought parts, principally engines, from salvage yards. It separately acquired transmissions, for which it also could not identify the donor tractor. It then assembled the parts into a glider tractor. This case fits the fact pattern of *Boise Nat'l Leasing, Inc.* There is no evidence that Plaintiff, like *Schneider*, previously owned the articles that were refurbished with a glider kit. More importantly, Plaintiff admitted it does not have the VINs—vehicle identification numbers—that could identify the articles it claimed to have repaired. (Tr. Ex. 135.) Plaintiff acquired only parts, and not an article, from multiple vendors. Judgment as a matter of law should thus be granted in the United States' favor.

## III. THE COURT IMPROPERLY EXCLUDED DR. LI'S TESTIMONY.

The United States' motion for a new trial should be granted because the Court

erroneously excluded Dr. Li's expert testimony. First, Dr. Li was offered as an expert in economics and data analysis to analyze Plaintiff's business records. Plaintiff did not dispute Dr. Li's qualifications as an expert.[10]

> [Dr. Li] provides an undisputed summary of business records that Fitzgerald provided to the government. His analysis is in line with Fitzgerald's review of its own business records and Fitzgerald does not dispute his document review. Fitzgerald only challenges the conclusions he reached from them.

(Dkt. 141-001 at pp.16-17 of 19).

Second, Dr. Li's analysis of the records went directly to Plaintiff's credibility. Keeping out Dr. Li's conclusions that Plaintiff's records did not support its claims made to the Court, to the IRS, and to the jury was clear error and not harmless. In its complaints, Plaintiff made the following allegations:

- All of [Plaintiff's] sales of rebuil[t] gliders are from donor tractors that were *previously taxed* that have been acquired by [plaintiff] and then rebuilt. . . . In each tractor rebuild, [plaintiff] *retains a copy of the originally taxed donor tractor's title* in its files. (Case 2:19-cv-00008 Dkt. 1-4 at PageID # 42–43 (emphasis added).)

- [Plaintiff] . . . ensure[d] that the Section 4051 excise tax previously had been paid on each of the donor tractors when they originally were sold in retail transactions. (Case 2:19-cv-00008 Dkt. 1-4 at PageID # 43–44.)

- [E]very one of the donor tractors that Taxpayer acquires and repairs was previously subjected to excise tax under section 4051(a) of the Internal Revenue Code, as *evidenced by Taxpayer's records*.[] In each case, *Taxpayer maintains documents showing that a donor tractor was acquired*, an invoice for the glider kit used to repair and restore the donor tractor, a bill of sale for Taxpayer's sale of the refurbished tractor to a third party, and a certificate of title for the refurbished glider. (Case No. 2:19-cv-0008 Dkt. 1-4 at PageID # 26 (emphasis added).)

In responding to interrogatories, Plaintiff elected to identify and produce its responsive business records. At trial, Plaintiff's witnesses repeatedly referred to the "millions" of records it had to

---

[10] On February 5, 2023, the United States timely disclosed the expert report of Dr. Li, an expert in economics and transactional analysis. Attached as Appendix B to the expert report of Dr. Li is a list of the documents on which he relied.

support its claims. (Trial Tr. at XX).

In his report, Dr. Li detailed how, for each of the over 12,000 sales at issue, he reviewed Plaintiff's sales files. Those files commonly disclosed the serial number of the engine that had been installed in the highway tractor that Plaintiff sold.[11] Since engine serial numbers are unique, Dr. Li listed for each of the sales at issue the engine serial number listed in Plaintiff's sales files. In addition, for those sales files that did not disclose the installed engine serial number, Dr. Li identified the installed engine serial number using other business records produced by Plaintiff. Dr. Li then used these unique engine serial numbers to conduct text searches of documents that might disclose the source(s) from which Plaintiff had obtained the engines. Such a transactional analysis was directly supported by Dr. Li's expertise in economics and data analysis. Dr. Li's analysis would aid the jury in understanding what Plaintiff's records showed and did not show. And, the analysis would aid the jury in assessing the credibility of Plaintiff and some of its witnesses.

After analyzing the records Plaintiff produced, Dr. Li concluded that the records did not support the claims made by Plaintiff. Even if, as is the case, Plaintiff has now changed its arguments and tried to walk away from its prior representations, fairness demands that the United States present its witness to explain that Plaintiff lied in its complaints filed with the court, lied to the IRS, and, in responding to discovery, misrepresented what its records showed.

Third, incredibly, notwithstanding Plaintiff's admission in responding to the Court's order compelling supplemental interrogatory responses (Dkt. 132)—that it could not identify the

---

[11] In Appendix C, Table 2, to his expert report, Dr. Li listed, by bill of sale number and date, the 12,803 sales at issue from 2012 – 2017. In Appendix C, Table 3, to his expert report, Dr. Li listed, by bill of sale number and date, the serial number of the installed engine, as listed within Plaintiff's business records.

worn or wrecked highway tractors that it allegedly repaired—the Court *sua sponte* posited at the *Daubert* hearing that there was reason to believe that Dr. Li was not a credible witness, that Dr. Li was not an impartial expert, that counsel for the United States failed to provide Dr. Li with a complete copy of Plaintiff's business records, and that counsel for the United States improperly manipulated Dr. Li. (Dkt. 182, Pages 118-15 through 120-15). There was not a scintilla of evidence to support these findings.

The Court's gratuitous attacks upon the veracity and credibility of both Dr. Li and counsel for the United States were without reason or support, given that Plaintiff admitted in its motion papers that Dr. Li's summary of its business records was accurate. (Dkt. 141-1 at pp.16-17 of 19). Plaintiff clearly did not dispute Dr. Li's summary of its business records or his document review, only the conclusions he reached from them, which, as recognized by the Court, were not legal. (Dkt. 182 115:20-25). As such, the Court had no basis for its attack upon the reliability of Dr. Li's proposed testimony or his expert report.

Similarly there was no basis for the Court's determination that Dr. Li's expert report and testimony were not reliable. The Court recognized that "[c]ertainly an expert might be able to present, through reason and analysis and principles, why certain things shouldn't be – and certain points shouldn't be accepted by a jury." (Dkt. 182 at 116:1–116:4). Dr. Li was qualified and prepared to do so.

Dr. Li's testimony and opinions were relevant to Plaintiff's claim that each of the worn or wrecked highway tractors were taxable when new, given that Plaintiff cannot even identify the worn or wrecked highway tractors that it allegedly acquired and repaired. His testimony was also relevant to the United States' position that the safe harbor applies only if Plaintiff can show it was repairing an identifiable article rather than buying and assembling parts. Finally, his

testimony and opinions were relevant to Plaintiff's credibility with respect to its alleged business and recordkeeping practices and the false representations it made about those practices. The exclusion of Dr. Li's testimony requires a new trial.

## IV. THE COURT ABUSED ITS DISCRETION IN LIMITING MR. MACKAY'S TESTIMONY

On February 6, 2023, the United States disclosed the report of Stuart MacKay. Mr. MacKay has many years of experience in the trucking industry. He examined Plaintiff's documents. He queried dealerships to obtain information regarding actual retail sale prices. He then opined, based upon his experience in the industry and the other information he reviewed, that Plaintiff's glider tractors sold for more than 75% of the retail price of a comparable tractor.

Plaintiff took no expert discovery. And it sent no discovery requests to the United States about the report. As Plaintiff insisted to the Court, it was under no obligation to do so. Having forfeited that opportunity once discovery closed, it was an abuse of discretion for the Court to order on the eve of trial, the production of communications with the dealers from whom he obtained comparable sales data. The last-minute order requiring Mr. MacKay to produce additional information, beyond the underlying sales data on which he had relied, did not give Mr. MacKay and the staff at MacKay and Company sufficient time to fully comply.

Again, on the eve of trial, the Court ordered the United States and Mr. MacKay to revise his report. Since the reports were not going to the be admitted, there was no reason to require this exercise. The Court allowed Plaintiff to elicit testimony and put in exhibits regarding prior audits as informative background. *See* Part V.A. below. The materials the Court ordered removed from Mr. MacKay's report was of a similar nature – general background and history of the glider tractor industry. It was an abuse of discretion to order the revision of Mr. MacKay's expert report and scope of his testimony when the Court did not treat Plaintiff the same.

**V. COMMENTS BY PLAINTIFF'S TRIAL COUNSEL AND WITNESSES AND EXHIBITS ABOUT PRIOR AUDITS WERE IRRELEVANT AND BECAME HIGHLY PREJUDICIAL BECAUSE OF THE COURT'S ORDER TO BIFURCATE THE TRIAL.**

Improper argument by trial counsel and their witnesses is grounds for a new trial. *Cleveland v. Peter Kiewit Sons' Co.,* 624 F.2d 749, 757 (6th Cir. 1980). In that case, the Sixth Circuit stated that "[i]n determining whether 'there is a reasonable probability that the verdict of a jury has been influenced' by improper conduct, warranting that the verdict be set aside, a court must examine, on a case-by-case basis, the totality of the circumstances, including the nature of the comments, their frequency, their possible relevancy to the real issues before the jury, the manner in which the parties and the court treated the comments, the strength of the case (e.g. whether it is a close case), and the verdict itself." *Id.*; *see also Bridgeport Music, Inc. v. Justin Combs Pub.,* 507 F.3d 470, 478 (6th Cir. 2007).

Applying the factors from *Peter Kiewit Sons' Co.* to this case shows that the jury was improperly prejudiced by Plaintiff's counsel's questions and comments about prior audits and witness testimony about prior audits through every day of the trial. "Counsel should not introduce extraneous matter before a jury or, by questions or remarks, endeavor to bring before it unrelated subjects and, where there is a reasonable probability that the verdict of a jury has been influenced by such conduct, it should be set aside." *Twachtman v. Connelly*, 106 F.2d 501, 508–09 (6th Cir. 1939). This is the rare case where a curative instruction to the jury does not rebalance the scales of justice.

Likewise, admitting exhibits which portrayed or recounted prior audits was error. The exhibits were not relevant, and if relevant, the relevance is outweighed by prejudice.

### A. The Court Improperly Allowed Fitzgerald's Trial Counsel and Witnesses to Discuss Fitzgerald's Audit History, Which was Irrelevant to the De Novo Tax Merits Trial and Highly Prejudicial.

At trial, Plaintiff's counsel and witnesses repeatedly asserted that the outcome of prior

audits—with an implied imprimatur from the IRS of its operations and recordkeeping—exonerated it from having to prove that it met the safe harbor for the tax periods at issue. Applying the factors from the *Peter Kiewit Sons' Co.* and reviewing the totality of circumstances, the unfair prejudice is revealed through: (1) the comments about prior audits were mentioned at length by every current or former employee or owner of the Plaintiff who was called as a witness by Plaintiff except for one; (2) the prior audits were mentioned over 60 times during trial; (3) the prior audits were irrelevant to the issues before the jury; (4) Plaintiff's counsel spoke of the prior audits in his opening statement and closing argument as a basis to find for Plaintiff; (5) the Court's instructions and reminders to the jury did not diminish the prejudice from the repeated and continual references to prior audit outcomes; (6) because the Court bifurcated the trial, the United States was unable to demonstrate that the results in prior audits were obtained by Plaintiff's misrepresentations to the IRS; and (7) relatedly, Plaintiff's case was weak as discussed in Parts I and II above.

First, every current or former employee or owner of Plaintiff who was called as a witness by Plaintiff mentioned the prior audits except for one. Plaintiff called Tommy Fitzgerald and Joseph DePew who discussed the prior audits. Plaintiff's outside accountant, Paul Roberts, also mentioned the prior audits. Eliciting information about the prior audits, referencing the prior audits in counsel's questions of the witnesses, and referencing the prior audits during opening statement and closing argument were part of Plaintiff's trial strategy to plant the seed in the mind of the jurors that Plaintiff had been led astray by the IRS and followed IRS guidance in trying to meet the safe harbor for the current tax periods.

Second, prior audits were mentioned by Plaintiff's counsel or witnesses no less than 61 times during its case in chief or rebuttal, creating a theme for Plaintiff that it relied on the prior

audits as a reason why the jury should return a verdict for Plaintiff. These witnesses or trial counsel mentioned prior audits: Tommy Fitzgerald: 9; Joseph DePew: 5; Paul Roberts: 9; Trial Counsel: 38.[12]

Third, the prior audits are irrelevant and, thus, highly prejudicial since the jury was likely misled to import significance to them, especially given the repeated discussion of the prior audits by Plaintiff's counsel and witnesses. Each tax quarter stands on its own and a determination of tax is subject to a *de novo* determination by the court. See *United States v. Skelly Oil Co.*, 394 U.S. 678, 684 (1969); *O'Neal v. Comm'r*, T.C. Memo 2016-49, 40 (2016) ("Additionally, each tax year stands on its own, and the Commissioner may challenge in a succeeding year what was condoned or agreed to for a prior year.") (citing *Rose v. Comm'r*, 55 T.C. 28, 31–32 (1972)).

Because the Court bifurcated the trial, testimony and documents about prior audits had little to no relevance in the safe harbor issue presented to the jury in this first part of the trial. *In re Beverly Hills Fire Litig.*, 695 F.2d 207, 216 (6th Cir. 1982). Even relevant evidence can be excluded if outweighed by prejudice. The relevance of prior audits is questionable and tangential at best. But even if at all relevant, prejudice and confusion to jury far outweighed any relevance.

Prior audits are irrelevant and highly prejudicial since a jury can ignore the facts at hand if they think the results of a prior audit has any significance, which it does not. A determination of tax liability in a refund suit is always a *de novo* judicial determination in district court. *See Mullins v. United States*, 210 F.R.D. 629, 630 (E.D. Tenn. 2002) (citing *Lewis v. Reynolds*, 284 U.S. 281, 283 (1932), and *Cleveland Tr. Co. v. United States*, 421 F.2d 475, 482 (6th Cir. 1970)); *Katz v. United States*, No. 91-5623, 1992 WL 103006 (E.D. Pa. May 6, 1992) (citing *Ky. Tr. Co. v. Glenn*, 217 F.2d 462, 465–66 (6th Cir. 1954)). The IRS's determinations in prior audits

---

[12] (Trial Tr. XX).

regarding the taxpayer are irrelevant to the Court's determination of Plaintiff's tax liabilities for the years at issue, 2012—2017. "[I]t is well established that the Commissioner is not estopped from challenging erroneously reported items where Internal Revenue agents have failed in prior years to challenge similarly erroneously reported items." *Union Equity Co-op. Exch. v. Comm'r*, 481 F.2d 812, 817 (10th Cir. 1973); *see also Dixon v. United States*, 381 U.S. 68, 72–73 (1965); *Campbell v. Brown*, 245 F.2d 662, 666 (5th Cir. 1957); *Rupert v. United States*, 225 F.R.D. 154, 157 (M.D. Pa. 2004). "[I]t is not for the court to look behind an assessment to evaluate the procedure and evidence used in making the assessment." *Katz v. United States*, No. 91-5623, 1992 WL 103006 (E.D. Pa. May 6, 1992) (citing *Ky. Tr. Co. v. Glenn*, 217 F.2d 462, 465-66 (6th Cir. 1954)).

And the prior audits go towards equitable concerns that the Court specifically bifurcated into a separate trial. The Court bifurcated this matter into a merits trial regarding the safe harbor and second trial on the remaining issues on equitable estoppel and the reasonable cause defense to penalties to be tried at a later date. (Docket No. 161). Fitzgerald was improperly allowed to present its equitable estoppel arguments at the merits stage by repeatedly referencing prior audits.

Plaintiff in effect presented an equitable case without any instructions to the jury on the heavy burden it faced with an equitable estoppel claim. *See* United States' Proposed Jury Instructions Nos. 11–17 (Dkt. No. 153). *See Fitzgerald Truck Parts & Sales, LLC v. United States*, 2023 U.S. Dist. LEXIS 76186, *18 (M.D. Tenn. May 2, 2023) ("[A]s the Supreme Court confirmed, the government may not be estopped on the same terms as other litigants, a party attempting to estop the government bears a very heavy burden in sustaining its argument." (internal quotations omitted)). This Court stated previously that a heavy burden means that "it

must prove [its claim] 'to the hilt' with clear and convincing evidence." "There is no room for speculation, inference or surmise and, obviously, any doubt must be resolved against [Plaintiff]." *Alyn v. S. Land Co., LLC*, No. 3:15-CV-00596, 2016 WL 7451546, at *6 (M.D. Tenn. Dec. 28, 2016) (Crenshaw, J.) (cleaned up). Bifurcation meant the jury did not receive this instruction. The only instruction received on burden of proof was that the taxpayer needed to prove its case by a preponderance of the evidence. *See* Jury Instructions at 36 (Dkt. No. 192).

Also, because the Court bifurcated the trial, the United States was unable to rebut Plaintiff's claims of reliance on prior audits or present evidence of Plaintiff's unclean hands, that is, that it misled the IRS to obtain favorable results. Nor did the United States have the opportunity to contend that there was no affirmative misconduct. For example, Plaintiff, through witnesses and counsel's questions, suggested to the jury that the IRS was obligated to tell it that MSRP was not an acceptable measure of retail price and that silence by the IRS on this point should be relevant to the jury's consideration of safe harbor qualification. But the law is clear that silence by the IRS (on a point covered by the statute) is not grounds to escape liability. The correct measure of retail price is a question of law. Even if a question of fact, the IRS's silence, absent affirmative misconduct, is not grounds for relief from liability. *Michigan Exp., Inc. v. United States*, 374 F.3d 424, 427 (6th Cir. 2004); *United States v. Guy*, 978 F.2d 934, 937 (6th Cir. 1992); *Tilley v. Kalamazoo Cty. Rd. Comm'r*, 777 F.3d 303, 311 (6th Cir. 2015); *United States v. River Coal Co.*, 748 F.2d 1103 (6th Cir. 1984).

Fourth, Plaintiff offered testimony from the representative of another taxpayer on how it was treated by the IRS. But Plaintiff cannot point to the treatment of other taxpayers to show that it was treated unfairly or that the IRS gave incorrect advice to others. *See Sherwin-Williams Co. v. United States*, 403 F.3d 793, 798 (6th Cir. 2005) (internal citation omitted); Part V.B, below.

Fifth, Fitzgerald relied on the prior audits as their case in chief and introduced little to no documentary evidence to support their claims, highlighting the weakness in their case. Fitzgerald provided no documentary evidence for 2015–2017 at all. The comments about the prior audits therefore were designed to prejudice the jurors to decide the case based on prior audits and not the evidence before them for the pending case.

### B. The Court Erred in Allowing Wainscott to Testify About Prior Audits of Another Taxpayer, Not the Merits of the Tax Case.

The Court allowed Allan Wainscott to testify about prior audits for a different taxpayer, Thompson Truck Center, which had nothing to do with the issue to go to the jury in this part of the bifurcated trial—whether Fitzgerald came within the safe harbor. Wainscott's testimony had nothing to do with whether Fitzgerald came within the safe harbor. He admitted that he didn't know if Fitzgerald had paid taxes on the sales of its gliders. (Trial Tr. XX). The prior audit of another taxpayer is clearly not relevant to a *de novo* determination here. This was yet another attempt to improperly influence the jury that prior audits were relevant to a decision in the trial at issue.

### C. The Court Erred in Allowing Joseph DePew to Discuss and Read From a 2005–2011 IRS Appeals Case Activity Record, Which was Irrelevant and Highly Prejudicial.

The Court erred in allowing Tr. Ex. 31, an IRS Appeals case activity record for an IRS Appeals Officer related to Fitzgerald's appeal of excise tax assessments for tax periods not at issue here, but for the prior periods 2005–2011. The IRS Appeals is an independent office within the IRS created by statute.[13] Tr. Ex. 31 was a set of notes created by an officer within this

---

[13] "In 1998, Congress passed Pub. L. No. 105-206, 112 Stat. 685 (1998), which created of an 'independent appeals function within the Internal Revenue Service' as a statutory mandate." *Id.* § 1001(a), 112 Stat. at 689." *Facebook, Inc. & Subsidiaries v. IRS*, 2018 U.S. Dist. LEXIS 81986, *6 (N.D. Cal. May 14, 2018).

independent office in settling excise tax assessments for tax quarters between 2005 and 2011 that Fitzgerald had appealed after assessment. There was no evidentiary basis for Fitzgerald to introduce the case notes from an IRS Appeals Officer (who was not called to testify by either party). The United States objected that this document contained inadmissible settlement notes under Federal Rule of Evidence 408. The Court let the document in because it concluded it was relevant to whether Fitzgerald meets the safe harbor and the circumstances leading up to it.

However, alleged relevancy does not make the document admissible. Even if the document were somehow relevant, which it was not as described above since it related to different tax periods, Federal Rule of Evidence 402 bars admission of relevant evidence if the Federal Rules prohibit admission. Here, and as argued in court, this document contained settlement communications protected under Federal Rule of Evidence 408. *See Bridgeport Music*, *Inc. v. Justin Combs Publ'g*, 507 F.3d 470, 481 (6th Cir. 2007) ("[T]he fact that defendants offered to settle a lawsuit already brought by plaintiffs for past acts of infringement is not at all probative of whether defendants infringed willfully, and such a fact, therefore, was not relevant."). This was yet another attempt to improperly influence the jury that prior audits were relevant to a decision in the trial at issue.

## VI. THE COURT IMPROPERLY EXCLUDED CERTAIN EXHIBITS.

The Court improperly excluded Tr. Exs. 50 and 51, which were offered as impeachment exhibits on July 11, 2023 with respect to Tommy Fitzgerald's testimony that Plaintiff only bought used engines from salvage yards in the United States. (Trial Tr. at XX). Tommy Fitzgerald was shown Tr. Exs. 50 and 51. (Trial Tr. at XX). Each of these exhibits includes the vendor invoice, on which the vendor listed its address as Mexico, and listed its sale of 14 used engines to Plaintiff, along with the sale price. Tommy Fitzgerald testified with respect to Exhibit 50 "The only problem that I have with this invoice, this invoice is made out to holiday lane,

which is a core facility. And in this invoice you can clearly see there's no 06R numbers." (Trial Tr. at XX).[14] However, on the Armando Fuentes tear down sheets, 11 of the 14 engine serial numbers are listed in full on Pl.'s Ex. 16 with the same engine model number. Tr. Ex. 50. On the Tractorfacciones tear down sheets, 6 of the 14 engine serial numbers are listed in full on Pl.'s Ex. 16, on which 5 of the 6 are listed with the same engine model number. Moreover, under Fed. R. Evid. 802(d)(2) each of these exhibits are excepted from hearsay and highly relevant to impeach Tommy Fitzgerald's misrepresentation concerning its foreign purchases of used engines. They were also business records of Plaintiff admissible under Fed. R. Evid. 803(6). The Court admitted Plaintiff's other emails as business records, such as Tr. Ex. 101, so there was no reason to come to a different conclusion about Tr. Ex. 51 (Trial Tr. at XX).

Tr. Ex. 234, an email from Plaintiff's employee and trial witness, Nick Bresaw, which included an email from another trial witness, Larry Hyatt, was also erroneously excluded. It was both a party admission by Plaintiff's agent and a business record. *See United States v. Evans Landscaping Inc.*, 850 Fed. Appx. 942, 949 (6th Cir. 2021) (finding that a business record and party admission satisfied the hearsay-within-hearsay rule). Further, this same scenario of hearsay-within-hearsay was admitted when Tr. Ex. 101, an email from Plaintiff's agent with an attached memorandum, was admitted by the Court. There was no reason for the Court to come to different conclusions about Tr. Ex. 234.

Tr. Ex. 102, an email from Plaintiff's employee and trial witness, Jim Bourke, to Chuck Clark, another trial witness, was also erroneously excluded, which was highly relevant in that it

---

[14] It is on the attached teardown sheets, associated with each of these invoices, that the engine serial number and engine model number are listed, not the invoices. These attached teardown sheets are prepared by Plaintiff upon its receipt and inspection of purchased engines, which Mike Aaron then emailed to Annie Talbott.

showed that Plaintiff was well aware that the new tractor sales prices against which it was competing were substantially discounted The email was not hearsay under Fed. R. Evid. 802(d)(2), and it was a business record under Fed. R. Evid. 803(6). The Court admitted Plaintiff's other emails as business records, such as Tr. Ex. 101, so there was no reason to come to a different conclusion about Tr. Ex. 102. (Trial Transcript at XX). The Court seemed to agree that the email was not hearsay when it ruled that Tr. Ex. 102 was inadmissible as cumulative. But it was not: it showed that comparable new tractors sold at a discount to MSRP.

## CONCLUSION

For all these reasons, the United States requests the Court grant its judgment as a matter of law or a new trial.

Dated: August 11, 2023,

Respectfully submitted,

HENRY C. LEVENTIS
United States Attorney

DAVID A. HUBBERT
Deputy Assistant Attorney General

By: s/ John A. Lindquist
JOHN A. LINDQUIST
Senior Litigation Counsel, Tax Division
STEPHEN HO
ALEXANDER KALYNIUK
Trial Attorneys
U.S. Department of Justice
P.O. Box 227
Washington, D.C. 20044
Telephone: 202-307-6561
Facsimile: 202-514-6866
Email: John.A.Lindquist@usdoj.gov

*Attorneys for the United States of America*

## CERTIFICATE OF SERVICE

I hereby certify that on August 11, 2023, a copy of the foregoing was filed electronically. A copy will be sent to the following, if registered, by operation of the Court's electronic filing system. If not registered, a copy was sent by United States First Class Mail, postage prepaid, to the following:

| | |
|---|---|
| W. Scott Sims, Esq.<br>Grace A. Fox, Esq.<br>Sims Funk, PLC<br>3322 West End Avenue<br>Suite 200<br>Nashville, TN 37203<br>Email: ssims@simsfunk.com<br>Email: gfox@simsfunk.com | Kendall C. Jones, Esq.<br>Zachariah W. Lindsey, Esq.<br>Eversheds Sutherland (U.S.) LLP<br>700 Sixth Street, NW<br>Suite 700<br>Washington, DC 20001<br>Email: kendalljones@eversheds-sutherland.com<br>Email: zacklindsey@eversheds-sutherland.com |

s/ John A. Lindquist
JOHN A. LINDQUIST